# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

**UNITED STATES OF AMERICA**

  v.

**TIMOTHY CHERRY**

**CRIMINAL CASE NO.
1:18-cr-00503-SCJ**

## ORDER

This matter is before the Court on Defendant's Motions to Suppress Evidence (Doc. No. [14]) and to Suppress Statements (Doc. No. [15]). On September 24, 2019, the Honorable Janet F. King, United States Magistrate Judge, held a hearing on those motions. See Doc. No. [44] (hearing transcript). Defendant and the Government further briefed the issues in post-hearing filings. See Doc. Nos. [45]; [46]; [47].

On December 26, 2019, Judge King issued a Report and Recommendation ("R&R") recommending that Defendant's motions be denied. See Doc. No. [48]. Defendant filed objections to the R&R on January 1, 2019. See Doc. No. [50]. The matter is now ripe for review by the Court.

## I. BACKGROUND

### A. Motions to Suppress

Defendant's post-hearing brief contends that officers lacked reasonable suspicion for a Terry[1] stop conducted on November 20, 2018, which resulted in the seizure of the firearm upon which the charges in the underlying indictment are based. See Doc. No. [45], pp. 7–12. He argues that the firearm is inadmissible as fruit of the unlawful search. See id. Defendant also argues his subsequent statements are inadmissible because they were made without receiving Miranda[2] warnings and are also fruits of the unlawful stop. Id. at 12–13.

The Government contends that the officers did have reasonable suspicion to support the Terry stop and that the warrantless seizure of the firearm fell within the exception for searches incident to lawful arrest or as an inventory search of Defendant's property as an arrestee. Doc. No. [46], pp. 4–10. The Government further argues that Defendant's statements made at the scene of his arrest were spontaneous, voluntary statements not made in response to interrogation. Id. at 10–12. In his reply brief, Defendant reiterates

---

[1] See Terry v. Ohio, 392 U.S. 1 (1968).

[2] See Miranda v. Arizona, 384 U.S. 436 (1966).

2

that the officers lacked reasonable suspicion for the Terry stop and that his arrest was unlawful but does not otherwise address the Government's arguments that the firearm was seized incident to lawful arrest or inventory search. Doc. No. [47], p. 6. Defendant then admitted that his statements at the scene were not made in response to interrogation but argues the statements should be suppressed as fruits of the unlawful detention and arrest. Id. at 6.

### B. R&R

After holding a hearing on the motions and reviewing the post-hearing briefs, Judge King entered an R&R recommending that Defendant's motions be denied. See Doc. No. [48]. Judge King found that (1) the officers had reasonable suspicion to conduct a Terry stop of Defendant; (2) Defendant was lawfully arrested for obstruction after being lawfully detained; (3) the firearm was seized in a search incident to lawful arrest; and (4) because Defendant was lawfully detained and arrested, his statements were not fruit of an unlawful search and seizure. Id. at pp. 17–26.

Because a comprehensive factual background is laid out in the R&R, see id. at 3–7, it will not be reiterated here. Relevant facts will be discussed below in the analysis of Defendant's objections and the review of the R&R.

3

### C. **Defendant's Objections**

Defendant "objects to both the factual and legal conclusions made in the R&R." Doc. Np. [50], p. 1. Defendant maintains his position that the officers lacked reasonable suspicion to conduct the Terry stop. Id. He argues that the testimony of Officer Idlett, one of two arresting officers, was not credible. Id. Because the Terry stop was not supported by reasonable suspicion, Defendant argues the firearm and statements are inadmissible as fruits of an unlawful stop and search. Id. at 2. He objects to the R&R's conclusions of fact finding otherwise. Id. The Government did not file a response to Defendant's objections.

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 636(b)(1), the Court must conduct a *de novo* review of those portions of the R&R to which Defendant has timely and specifically objected. The Court may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1); United States v. Raddatz, 447 U.S. 667 (1980). The district judge must "read the transcript of the hearing before a magistrate on a motion

to suppress, before adopting the magistrate's recommendation." United States v. Elsoffer, 644 F.2d 357, 358 (5th Cir. 1981) (per curiam).³

For a party's objections to warrant *de novo* review, he "must clearly advise the district court and pinpoint the specific findings that [he] disagrees with." United States v. Schultz, 565 F.3d 1353, 1360 (11th Cir. 2009). The Eleventh Circuit has noted that "[p]arties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988). The remainder of the R&R, to which neither party offers specific objections, will be assessed for clear error only. See Tauber v. Barnhart, 438 F.Supp.2d 1366, 1373 (N.D. Ga. 2006) ("[I]ssues upon which no specific objections are raised do not so require *de novo* review; the district court may therefore 'accept, reject, or modify, in whole or in part, the findings or recommendations made by the

---

³ In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

magistrate judge[,]' applying a clearly erroneous standard.") (quoting 28 U.S.C. § 636(b)(1)).

**III.    ANALYSIS**

   **A. <u>Terry</u> Stop**

Defendant has specifically objected to the R&R's conclusion that the <u>Terry</u> stop was supported by reasonable suspicion. Thus, the Court will review that finding *de novo*, beginning with a review of the hearing transcript.

   *1. Facts*

At the September 24, 2019 hearing, Officer Idlett testified that on November 20, 2018, he was on-duty when the convenience store clerk at the Circle K off Joseph E. Lowry Boulevard called him on his cellphone. Doc. No. [44], p. 5. Officer Idlett knew the clerk, Imina, because he had a practice of meeting with and giving out his cellphone number to local business owners to "be proactive." <u>Id.</u> Imina told Officer Idlett that a male that was involved in a robbery at another store was inside his store. <u>Id.</u>

Officer Idlett knew that, on November 17, 2018, a different convenience store had been robbed and a store clerk was shot. <u>Id.</u> at 55–56. A "BOLO" or "Be On the Lookout" was issued for the suspect, which included pictures of the

6

suspect from the robbery. Id. Officer Idlett receives all BOLOs as a member of the crime suppression unit. Id. at 6. He testified that he remembered receiving the November 17 BOLO with the pictures attached. Id. at 7. He testified he reviewed the pictures on his officer computer and downloaded them to his cellphone for potential future use. Id. at 36.

After Officer Idlett received the BOLO, but before November 20, 2018, he received at least two calls from Imina at the Circle K. Id. at 25–26. Imina told Officer Idlett he believed the suspected robber was in his store at the time. Id. He also sent Officer Idlett photographs of the robber in the BOLO—the same photographs Officer Idlett had received on November 17. Id. at 28. Imina had the photographs because they were given to him by the Circle K's owner, who also owned the store where the November 17 robbery occured. Id. at 30–31. Imina told Officer Idlett that he knew the person in the pictures, as he came to the Circle K "all the time." Id. at 31.

The first two times Imina called, Officer Idlett was unable to respond to the Circle K, as he was "either off work or just out of the area." Id. at 7–8. Officer Idlett told Imina to call him again if the man showed up at the store. Id. at 31. Officer Idlett testified that Imina did not state that the man had committed any

7

crime in the Circle K—only that the man from the BOLO came to the Circle K "all the time." Id. at 32.

On November 20, 2018, Officer Idlett received a third call from Imina. Id. at 7–8. This time, he was just "down the street," so he was able to respond. Id. at 8. He was accompanied by his partner of about three years, Officer Nicole Brown. Id. The officers arrived at the Circle K and gave their location and their reason for being there on the radio. Id. They entered the store and approached Defendant, who was standing at the counter buying cigarettes. Id. at 39. Defendant was wearing a fanny pack across one shoulder. Id. at 12.

Officer Idlett testified he "believed it was him [from the BOLO]. From the nose structure, the color of the skin, I believed it was him." Id. at 9. He asked Defendant for an I.D., and Defendant told him he did not have one with him. Id. at 8. Officer Idlett testified that he did not observe a weapon or suspicious bulge in Defendant's clothing at that time. Id. at 32–33, 42. Nor had he observed Defendant commit a crime or been advised that Defendant had committed a crime. Id.

Defendant asked Officer Idlett "what [this] was about," and Officer Idlett replied "well, we'll talk a little bit, but I jut need to detain you for further

8

investigation." Id. at 9. Officer Idlett then grabbed Defendant's arm and attempted to place handcuffs on him. Id. at 9, 43–45. Officer Idlett testified that, at that point, "the fight was on," and a struggle with both officers ensued for several minutes. Id. at 9–11. Other officers responded to a call for assistance, and Defendant was eventually subdued, handcuffed, and escorted out of the store to receive medical assistance. Id. at 10–12, 46–47.

Defendant was placed under arrest for obstruction. Id. at 13–14. Defendant's fanny pack, which had been dislodged during the struggle, was retrieved from inside the store. Id. at 12. While Defendant was being treated, Office Idlett, standing with Defendant, removed the items from the fanny pack to inventory. Id. at 14. Officer Idlett testified Atlanta PD policy requires taking an inventory of arrestee's property before transporting the arrestee to jail to prevent allegations of theft. Id. Officer Idlett removed a loaded handgun from the fanny pack. Id. Officers Idlett and Brown then transported Defendant to headquarters. Id.

### *2. Reasonable Suspicion*

The Government argues the Terry stop was supported by reasonable suspicion based on two things: (1) the information Imina provided to Officer

9

Idlett in his phone calls and text messages, and (2) Officer Idlett's testimony that he believed Defendant matched the photograph of the robbery suspect from the BOLO. Doc. No. [46], pp. 5–7. Defendant argues that, because Officer Idlett did not testify as to any suspicion that a crime had occurred or was about to occur at the Circle K on November 20, there was no reasonable suspicion to support a <u>Terry</u> stop of Defendant. Doc. No. [45], pp. 8–10.

Law enforcement agents may briefly detain individuals for purposes of investigating a crime if they have a reasonable, articulable suspicion based on objective facts that the individual has engaged in, or is about to engage in, criminal activity. <u>See</u> <u>Terry</u>, 392 U.S. at 21–22. This is an objective standard, meaning the facts available to the officer at the moment of the stop must be sufficient to "warrant a man of reasonable caution in the belief that the action taken was appropriate." <u>Id.</u> (citations omitted).

The Supreme Court has said repeatedly that reviewing courts must look at the "totality of the circumstances" of each case to see whether the detaining officer had the requisite "particularized and objective basis" for suspecting legal wrongdoing. <u>See, e.g.,</u> <u>United States v. Cortez</u>, 449 U.S. 411, 417–418 (1981). This includes an officer's own experience and specialized training. <u>Id.</u>

10

at 418; see also Ornelas v. United States, 517 U.S. 690, 699 (1996) (reviewing court must give "due weight" to factual inferences drawn by local law enforcement officers). Although an officer's reliance on a mere "hunch" is insufficient to justify a stop, Terry, 392 U.S. at 27, the likelihood of criminal activity need not rise to the level required for probable cause. United States v. Sokolow, 490 U.S. 1, 7 (1989).

On November 20, 2018, Officer Idlett received a third call from Imina informing him that the suspect from the November 17 robbery and shooting was in his store. Officer Idlett testified that Imina told him he knew the man well, as he was in the store "all the time." Imina also sent Officer Idlett the same pictures from the November 17 BOLO. The Court finds Officer Idlett's reliance on this information was justified.

First, Officer Idlett knew and had interacted with Imina in the past, meaning Imina was not an anonymous tipster. "Unlike the anonymous tipster, a witness who directly approaches a police officer can also be held accountable for false statements." United States v. Kirton, No. 119CR00022WMRJFK, 2019 WL 6868978, at *10 (N.D. Ga. Oct. 18, 2019), report and recommendation adopted, No. 1:19-CR-00022-WMR, 2019 WL 6840132 (N.D. Ga. Dec. 16, 2019)

(quoting United States v. Christmas, 222 F.3d 141, 144 (4th Cir. 2000)). Imina called Officer Idlett three times to report that the man from the November 17 surveillance photographs was in his store, and he provided those photographs to the officer. Coupled with Imina's statement that he knew the man because he was in the store "all the time," Officer Idlett's reliance on Imina's report was justified.

Second, Officer Idlett independently corroborated Imina's report when he arrived on scene and determined that Defendant matched the BOLO photographs. See United States v. Martin, 297 F.3d 1308, 1314 (11th Cir. 2002) (noting that "sufficient independent corroboration of an informant's information" can provide a basis for establishing veracity) (citation omitted)). Defendant argues that this conclusion was not reasonable because he was not, in fact, the man in the BOLO photographs. Doc. No. [45], p. 11. However, the question is whether Officer Idlett had an objectively reasonable belief that Defendant was the suspect in the photographs at the time he detained Defendant. Officer Idlett had seen the BOLO photographs multiple times and concluded "from the nose structure" and "color of the skin" that Defendant

matched the robbery suspect. The Court finds his belief was objectively reasonable.

After concluding Defendant matched the photographs from the November 17 BOLO, Officer Idlett had a reasonable articulable suspicion that criminal activity was about to occur. It is uncontested that Officer Idlett did not witness, and Imina did not report witnessing, Defendant commit suspicions or criminal activity. However, Judge King was correct when she found this sets "too exacting a standard." Doc. No. [48], p. 16. The man in the BOLO photographs was suspected of committing an armed robbery and shooting a convenience store clerk not far from the Circle K. Imina's reports that Defendant was in the store "all the time," coupled with Imina's belief and Officer Idlett's belief that Defendant was the man in the BOLO pictures, supports an objectively reasonable suspicion that he might be about to commit another robbery or was "casing out" the Circle K for another robbery.

### 3. *Credibility of Witness*

Defendant also argues that Officer Idlett's testimony that he believed Defendant matched the man in the BOLO photographs was not credible. Id. at 9–11. He argues that "Officer Idlett could not remember . . . when he received

13

the BOLO photographs from the Circle K manager; when the manager called him; when he viewed the BOLO photographs sent through the APD email; and how the images appeared when he viewed the APD email." Id. at 11. Thus, he argues, "it is not credible that he had a clear memory, at the time he encountered [Defendant] in the Circle K, of images he had viewed on his cell phone and computer, twice, three days and more prior." Id.

The court notes that Officer Idlett testified on September 24, 2019—almost a year after Defendant's arrest. See Doc. No. [44], p. 1. That he could not recall exactly when and how many times he had viewed the BOLO photographs before arriving at the Circle K a year later is unsurprising and does not preclude a finding that he had reasonable suspicion at the time of the stop.

Furthermore, Judge King, who heard the testimony and presided over the evidentiary hearing, concluded that Officer Idlett was credible. Doc. No. [48], pp. 8–9. "Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses." United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002). Defendant

14

points to no other evidence which would discredit Officer Idlett's testimony, and the Court sees none in the record. Therefore, the Court agrees with Judge King's conclusion.

### B. Seizure of Firearm

Defendant's evasive behavior cannot be considered in the analysis of the Terry stop, because it occurred after Officer Idlett initiated the detention. See Terry, 392 U.S. at 21–22 (noting the objective standard is based upon the facts available to the officer at the moment of the stop). This behavior can be considered, however, in assessing the basis for his arrest.

Having found that the Terry stop was justified, Defendant's subsequent arrest for obstruction was also justified. See United States v. Mitchell, 2019 WL 6462838, at *30 (N.D. Ga. June 25, 2019) ("The defendant's refusal to comply with an officer's lawful directive or command amounts to obstruction under Georgia law.") (citation omitted). Thus, the Court concludes that the seizure of the firearm was lawful for two independent reasons: search incident to lawful arrest and inventory search.

"It is well-settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment." United

States v. Robinson, 414 U.S. 218, 224 (1973). This exception provides that officers may search "the arrestee's person and the area within his immediate control." Chimel v. California, 395 U.S. 752, 763 (1969) (internal quotation marks omitted). See also United States v. Standridge, 810 F.2d 1034, 1037 (11th Cir. 1987) ("A search incident to arrest is always allowed of the suspect's person and the immediate area from which the suspect can grab a weapon or destroy evidence.").

The fanny pack was on Defendant's person when Officer Idlett initiated the Terry stop—it only became dislodged after Defendant tried to fight the officers off. After Defendant was subdued, the pack lay only a few feet away. In United States v. Jean, the Eleventh Circuit noted that it has found "that searches of wallets or bags on or near the arrestee are valid searches incident to arrest under a variety of factual circumstances." 636 F. App'x 767, 769 (11th Cir. 2016) (citing United States v. Rosenthal, 793 F.2d 1214, 1232 (11th Cir. 1986), modified, 801 F.2d 378 (11th Cir. 1986) (per curiam) (search of handbag); United States v. Richardson, 764 F.2d 1514, 1527 (11th Cir. 1985) (search of wallet); United States v. Roper, 681 F.2d 1354, 1357 (11th Cir. 1982) (search of briefcase and book bag)).

Alternatively, the fanny pack was searched pursuant to a constitutionally permissible inventory policy. The Supreme Court has held that police may search the personal effects of a person under lawful arrest as part of the routine administrative procedure incident to booking and jailing the suspect. Illinois v. Lafayette, 462 U.S. 640, 643 (1983). Even if the search was not valid incident to the arrest, "the contents of the bag would nevertheless have been admissible because the officers inevitably would have discovered the evidence in a routine inventory search following [Defendant's] arrest." Jean, 636 F. App'x at 769 (quoting United States v. Rhind, 289 F.3d 690, 694 (11th Cir. 2002)). Thus, the search of the fanny pack and seizure of the firearm was lawful.

### C. **Post-Arrest Statements**

Defendant now agrees that his post-arrest statements "were not made in response to police interrogation." Doc. No. [47], p. 6. Therefore, Miranda does not apply. See Miranda, 384 U.S. at 444–445 (holding Miranda warnings must be given before a suspect can be subjected to "custodial interrogation"). However, Defendant argues that the statements "are due to be suppressed as the fruit of the unlawful search." Id. (citing Taylor v. Alabama, 457 U.S. 687,

17

694 (1982)). Having found that no unlawful search was conducted, Defendant's argument fails. See United States v. Lopez-Garcia, 565 F.3d 1306, 1315 (11th Cir. 2009) (finding the defendant's "fruit of the poisonous tree argument plainly collapses since . . . his Fourth Amendment rights were never violated").

## IV. CONCLUSION

For the forgoing reasons, the R&R (Doc. No [48]) is **ADOPTED** in its entirety. Defendant's objections (Doc. No. [50]) are **OVERRULED**. Defendant's Motions to Suppress Evidence (Doc. No. [14]) and to Suppress Statements (Doc. No. [15]) are **DENIED**.

**IT IS SO ORDERED** this 3rd day of March, 2020.

s/Steve C. Jones  
**HONORABLE STEVE C. JONES**  
**UNITED STATES DISTRICT JUDGE**